UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ADAM J. VISNICK and HOWARD VISNICK, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SANCTUARY 4298 INVESTMENTS LLC, )<br>)<br>Defendant. ) | CIVIL ACTION<br>NO. 04-10815 MLW |

### AFFIDAVIT OF DAVID M. WARDWELL, ESQ.

I, David M. Wardwell, do hereby depose and state that the following is based on my personal knowledge and is true to the best of my memory and belief:

1. I am an attorney in good standing and admitted to practice law in Massachusetts. My law office is located at 92 State Street, Boston, MA.

2. I am counsel to Robert Abrams, who resides in Boca Raton, FL.

3. In December of 2002, Howard Visnick contacted me seeking to arrange financial assistance to Howard's son, Adam Visnick, whom was experiencing financial troubles arising out of his failing boat business. I provided a letter to Howard's attorney, Mr. Wolfe, for presentation to the federal court in a proceeding to assist postponing the repossession of Adam's business boat.

4. In January of 2003, Howard Visnick again contacted me to discuss the possibility of a loan from Mr. Abrams to Adam Visnick in order to save Adam's boat from repossession and to stave off foreclosure proceedings against Adam's house in Gloucester, MA, which I was led to

believe from conversations with Howard Visnick had a mortgage taken on it from Chase Manhattan Mortgage Corp. as security for a loan to Adam needed for his business debts.

5.  Mr. Abrams agreed to loan Adam Visnick $260,000 through Sanctuary 4298 Investments LLC ("Sanctuary"), a company Mr. Abrams had set up in 1997. As security for the loan, Sanctuary was to received a first mortgage on Adam Visnick's home in Gloucester, and Howard Visnick was going to provide a personal guarantee of the loan.

6.  On January 20, 2003, the Visnicks came to my office in the hopes that the funds had arrived. While they were in my office, I asked both of them whether the loan was a commercial loan. Both Howard and Adam Visnick stated that the loan was for commercial purposes. I indicated to them that if it was not, I would require a waiver of the three-day rescissionary period. They both reiterated that the loan was a commercial loan. Based on their representations, I did not require them to execute a notice of a right of rescission form, and neither one of them said anything to lead me to believe I need to do so.

7.  On that same day, we executed the loan documents, and as a courtesy, I provided Howard Visnick with a check for $15,000 to provide the following day to his attorney, Robert Wolfe, to pay off accrued fees and interest on Adam's boat business.

8.  On January 21, 2002, I received the funds from Sanctuary and I directly disbursed the proceeds to various persons and/or entities. In particular, I wired directly to Chase Manhattan Mortgage Corp. the sum of $178,441.23. Out of the total $260,000, Adam Visnick only received $477.62 as the balance of the disbursed proceeds.

9.  The Plaintiffs subsequently defaulted on the loan. Out of concern regarding repayment, I asked Adam and Howard Visnick to come to my office to discuss the matter

2

because Howard raised for the first time the issue of a right to cancel the loan based on a lack of notice to rescind.

10. On or about the early part of March, 2004, Howard and Adam Visnick came to my office. However, I did not show either of them a waiver of the right of rescission form. Instead, I attempted to confirm our conversation we had at the time of the execution of the loan documents regarding the commercial purpose of the loan. In response, Howard Visnick claimed that he "had a convenient memory" and that he "didn't recall" the conversation. Adam Visnick likewise denied any memory of the conversation.

Signed under the pains and penalties of perjury this 12th day of May, 2004.

David M. Wardwell